**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                                )
MICHEL LEVANT,                  )
                                )
            Plaintiff,          )
                                )
     v.                         )   Civ. Act. No. 02-704 (EGS)
                                )
JAMES G. ROCHE, SECRETARY OF    )
THE AIR FORCE, et al.,          )
                                )
            Defendants.         )
_____)
```

**MEMORANDUM OPINION**

Plaintiff Michel Levant, Brigadier General (Ret.) in the United States Air Force Reserve, brings this action against Secretary James G. Roche, in his official capacity, and the Department of the United States Air Force, asserting claims pursuant to the federal Privacy Act, 5 U.S.C. § 552a, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq., the federal Mandamus statute, 28 U.S.C. § 1361, and various constitutional provisions.  Essentially, plaintiff contends that defendants improperly denied him a promotion to the rank of major general, and subsequently denied him access to documents that could help prove his claim.

Pending before the Court is defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment.  Upon careful consideration of defendant's motion, the response and reply

1

thereto, the governing statutory and case law, and the entire record, the Court is persuaded that the defendants are entitled to summary judgment and plaintiff's Complaint will be **DISMISSED WITH PREJUDICE.**

I.   **BACKGROUND**

In October 1989, while plaintiff was serving in the grade of brigadier general in the Air Force Reserve, Lieutenant General Thomas J. Hickey, then Deputy Chief of Staff for Personnel at Air Force Headquarters, convened a Selection Board to consider sixteen candidates, including plaintiff, for promotion to the reserve grade of major general for the calendar year 1990.  After evaluating the candidates' qualifications and producing a descending score roster ("DSR") that reflected each candidate's scored rank,[1] the Board ultimately decided to select the top five candidates for promotion to major general.  *See* Administrative Record ("AR") 672, Report of the Proceedings of the Air Force Reserve General Officer Selection Board, Ex. C.  Plaintiff, ranked seventh, was not among the names forwarded to the Secretary for promotion.  Levant subsequently transferred to the Retired Reserve effective March 15, 1991.

_____

[1] A redacted copy of the DSR was filed under seal as Exhibit 8 to defendants' motion.  The candidates' scores ranged from a high of 57 to a low of 19.  Defs.' Mem. Ex. 8.  Levant received a score of 46, which placed him in the seventh position, seven points behind the score of the last candidate selected for promotion.  *Id.*

In November 1991, plaintiff filed an application to the Air Force Board for Correction of Military Records ("AFBCMR")[2] requesting that his non-selection be voided, and seeking retroactive reinstatement to the active Air Force Reserve and correction of his records to reflect a grade of Major General. *See* AR 42.  The Board denied plaintiff's request on April 6, 1993, finding that he had not presented sufficient evidence to "demonstrate the existence of probable error or injustice" regarding his non-selection.  AR 37.

Plaintiff requested de novo consideration of his application on June 17, 1993.  *See* AR 420.  In July 1997, following several supplemental filings, the AFBCMR found that plaintiff's application and supplemental materials painted a "montage of suspicion in the applicant's favor for reconsideration."  AR 20. Accordingly, the Board found it "in the interest of justice to afford the applicant a reevaluation of his record by a Special

_____

[2] The AFBCMR is composed of civilians who evaluate service-members' claims of error or injustice in their military records. *See Dickson v. Secretary of Defense*, 68 F.3d 1396, 1399 (D.C. Cir. 1995).  The AFBCMR derives its authority, as do similar boards in the other military branches, from 10 U.S.C. § 1552(a)(1), which states:
> "The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice ... [S]uch corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department."

10 U.S.C. § 1552(a)(1).

Review Board" ("SRB") comprised of military officers. *Id.*   The
SRB compared plaintiff's military record with benchmark records
of the five selectees and five non-selectees to determine whether
plaintiff should have been recommended for promotion by the
original CY '90 Selection Board.   *See* AR 1607-08, Special Review
Board Procedures.   Following this review, the SRB notified the
AFBCMR that "in the opinion of a majority of the voting members,
Michel Levant ... should not have been recommended for promotion
to major general by the CY 90 Air Force Reserve General Officer
Selection Board."   AR 1599, Special Review Board Report.[3]   On
October 28, 1999, after considering submissions by plaintiff,
advisory opinions from various Air Force offices, and the
recommendation of the SRB, the AFBCMR denied plaintiff any
relief, concluding that "[i]nsufficient relevant evidence has
been presented to demonstrate the existence of probable error or
injustice warranting the applicant's promotion to the Reserve

---

[3] Plaintiff's concerns regarding the selection process were
independently investigated by the Secretary of the Air Force,
Inspector General (SAF/IG), which ultimately concluded that
plaintiff's allegations were unsubstantiated.   *See* AR 926-950,
SAF/IG Investigation Executive Summary and Report of Inquiry.
The Department of Defense Inspector General (DoD/IG)
independently reviewed the SAF/IG investigation and concurred in
its findings, although it found that the Air Force Inspector
General "should have conducted additional inquiry" into the
propriety of certain pre-selection meetings in which priorities
for promotion were allegedly discussed.   *See* AR 1146, DoD/IG
Letter to Michel Levant.   Ultimately, however, the DoD/IG
informed plaintiff that the AFBCMR is the "appropriate authority
for any additional review" of the case.   AR 1147.

grade of major general."  AR 8.

In an effort to support his application before the AFBCMR, plaintiff filed a number of requests for documents pursuant to the Freedom of Information Act ("FOIA") and the Privacy Act. Plaintiff's first document request was partially denied on July 29, 1992.  AR 219.  Specifically, defendants notified plaintiff that the requested documents were not maintained in a Privacy Act system of records; that records containing personal information of other officers, social security numbers, security clearance levels, age and age indicators, selection board scores, and eligibility information were withheld under FOIA exemption 5 U.S.C. § 552(b)(6) and Air Force Regulation 12-30, paragraph 10(f); and that "score sheets,"[4] pre-deliberative opinions, recommendations, board briefings, board reports, and other pertinent evaluation materials were withheld as pre-decisional, interagency memoranda under FOIA exemption 5 U.S.C. § 552(b)(5) and Air Force Regulation 12-30, paragraph 10(e).  AR 219; *see* Consolidated Material Facts ¶ 22.  The Air Force released certain additional records to plaintiff on April 14, 1993, but continued

---

[4] Defendants sent additional letters to plaintiff on May 23, 1997 and August 6, 1997 to clarify that "score sheets" are not required to be maintained and were destroyed following the CY '90 Selection Board's adjournment.  Defendants' reference to "score sheets" in their 1992 FOIA response was in error and was actually referring to the descending score roster, which the Air Force withheld as exempt by letter dated April 4, 1997.  *See* Consolidated Material Facts ¶ 25; Defs.' Mem. Exhibits 4-5.

to withhold others for the reasons described above.  AR 1517; *see* Consolidated Material Facts ¶ 23.  Plaintiff filed a FOIA appeal on May 6, 1996, which was denied by letter dated April 4, 1997. Defs.' Mem. Ex 3; *see* Consolidated Material Facts ¶ 25. Plaintiff filed one final request for the descending score roster by letter dated November 4, 1999, which was denied by defendants on February 16, 2000.  Defs.' Mem. Exhibits 6-7; *see* Consolidated Material Facts ¶ 26.

Plaintiff filed the instant action on April 12, 2002 seeking retroactive reinstatement or promotion to the rank of Major General and all related benefits; actual damages for defendants' alleged "intentional or willful" violations of the Privacy Act; disclosure of all records that establish Plaintiff's "right and entitlement" to retroactive promotion; and attorneys' fees and costs as allowed by applicable law.  *See* Compl. ¶¶ 6-9.

## II.  STANDARDS OF REVIEW

### A.    Failure to State a Claim

The Court will not grant a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Accordingly, at this stage of the proceedings,

the Court accepts as true all of the complaint's factual
allegations. *See Does v. United States Dep't of Justice*, 753
F.2d 1092, 1102 (D.C. Cir. 1985).  Plaintiff is entitled to "the
benefit of all inferences that can be derived from the facts
alleged." *Kowal*, 16 F.3d at 1276.

   **B.   Summary Judgment**

   Pursuant to Federal Rule of Civil Procedure 56, summary
judgment should be granted only if the moving party has shown
that there are no genuine issues of material fact and that the
moving party is entitled to judgment as a matter of law. *See*
Fed. R. Civ. P. 56*; Celotex Corp. v. Catrett*, 477 U.S. 317, 325
(1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991
(D.C. Cir. 2002).  In determining whether a genuine issue of
material fact exists, the court must view all facts in the light
most favorable to the non-moving party. *See Matsushita Elec.
Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The
non-moving party's opposition, however, must consist of more than
mere unsupported allegations or denials and must be supported by
affidavits or other competent evidence setting forth specific
facts showing that there is a genuine issue for trial.  Fed. R.
Civ. P. 56(e); *see Celotex Corp.*, 477 U.S. at 324.

   **C.   Review of AFBCMR Decisions**

   The AFBCMR is an "agency" for purposes of the APA.  *See* 5
U.S.C. § 701(b)(1)(defining "agency" to include "each authority

7

of the Government").[5]   Hence, the Court must defer to the Board's

decisions unless they are "arbitrary and capricious, contrary to

law, or unsupported by substantial evidence."   *See Frizelle v.*

*Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997); *Dickson v. Secretary*

*of Defense*, 68 F.3d 1396, 1404 (D.C. Cir. 1995).   The AFBCMR's

authorizing statute provides the agency with considerable

discretion in determining whether or not to take corrective

action with respect to an applicant's record.

> The Secretary, acting through the Board, 'may correct
> any military record of that department *when he*
> *considers it necessary* to correct an error or remove
> and injustice,' 10 U.S.C. § 1552(a)(emphasis added),
> not simply when such action *is* necessary to correct an
> error or remove an injustice.

*Kreis v. Secretary of the Air Force*, 866 F.2d 1508, 1513-14 (D.C.

Cir. 1989)(noting that this scheme "exudes deference" to the

Secretary and "substantially restrict[s] the authority of the

reviewing court to upset the Secretary's determination").

Accordingly, adjudication of the Board's decision requires the

Court "to determine only whether the Secretary's decision making

process was deficient, not whether his decision was correct."

*Id.* at 1511.

----

[5] The only exceptions pertaining to the military are for
"military authority exercised in the field in time of war or in
occupied territory," 5 U.S.C. § 701(b)(1)(G), and "courts martial
and military commissions," *id.* § 701(b)(1)(F), neither of which
applies here.   *See Dickson v. Secretary of Defense*, 68 F.3d 1396,
1401 n.6 (D.C. Cir. 1995).

## III.  DISCUSSION

### A.     APA Claims

While plaintiff is obviously disappointed by defendants'
decision not to promote him, this Court does not have
jurisdiction to second-guess the Selection Board's decision and
order a retroactive promotion by judicial decree.  In a similar
case involving an Air Force officer's challenge to his non-
promotion, the Court of Appeals remarked that

> [a]ppellant's request for retroactive promotion falls
> squarely within the realm of nonjusticiable military
> personnel decisions.  To grant such relief would
> require us to second-guess the Secretary's decision
> about how best to allocate military personnel in order
> to serve the security needs of the Nation ... Congress
> has vested in the Secretary alone the authority to
> determine whether the original selection boards erred
> in comparing appellant to the other candidates for
> promotion.

*Kreis*, 866 F.2d at 1511.  On the other hand, this Court does have
jurisdiction to evaluate the reasonableness of the AFBCMR's
decision not to take corrective action, albeit under a
deferential "arbitrary and capricious" standard of review.  *See
id.* at 1511-12; *Frizelle*, 111 F.3d at 176; *Dickson*, 68 F.3d at
1404; *see also Fontana v. Caldera*, 160 F. Supp. 2d 122, 126
(D.D.C. 2001).  On the basis of this record, however, even
viewing the facts in the light most favorable to plaintiff, the
Court cannot find that the Board's actions were arbitrary,
capricious, or contrary to law.

9

Plaintiff's case hinges on his theory that the Selection Board was *required* to select seven candidates for promotion and that he was effectively promoted at the moment the Selection Board ranked him number seven on its list of eligible candidates. *See* Opp'n at 3 ("the Selection Board ranked Plaintiff among the top seven, thereby promoting him to Major General").  Thus, plaintiff argues that defendants' failure to deliver his name for confirmation by the Senate was contrary to law and is reviewable under the APA.  *See, e.g.,* Compl. ¶ 22 (Hickey had "no discretion" to forward less than seven names to the Secretary); Opp'n at 15-17 (arguing that the Secretary had no authority to withhold plaintiff's promotion).  Plaintiff's theory is belied by the specific instructions given to the selecting officials.  The CY '90 Selection Board was convened to select "not more than" seven candidates for major general.  *See* AR 539, Lt. Gen. Yates' Opening Remarks to the Air Force Reserve General Officer Selection Board (Oct. 1989); *see also* AR 668, Report of Proceedings of the Air Force Reserve General Officer Selection Board (Oct. 1989).  The plain meaning of these words suggests that the Board could select up to seven candidates, but it was free to select fewer in its discretion.  *See* AR 550, Board Guidance to Major General (directing the Board that "quality permitting, you may select *up to* 7 brigadier generals for major general")(emphasis added).  The Board's discretion to select

10

fewer than seven is evident in Lt. General Yates' instructions specifically cautioning the Board "to guard against the tendency to automatically promote to fill the max allowable number."  *See* AR 540 (noting that "if the quality is not there, we don't have to recommend for promotion"); *see also* AR 537, Lt. Gen. Hickey's Opening Remarks ("I would caution all of you against automatically promoting to fill the briefed number.").

The CY '90 Selection Board's eventual decision to select only five candidates is supported by the evidentiary record.  The Descending Score Roster prepared by the Board reflects the following scores for the top seven candidates:

    1) 57
    2) 57
    3) 56
    4) 54
    5) 53
    6) 47
    7) 46 (plaintiff's score)

*See* Defs.' Mem. Ex. 8.  General William M. Rowley, an original member of the Selection Board, explained in his official testimony to the SAF/IG that when the Board put everybody in order it was obvious that the top five "seemed to be head and shoulders above the rest of the group."  *See* AR at 1231, Testimony of MG (Ret.) William M. Rowley.  According to Rowley, it was the "unanimous concurrence of everybody on the Board" that the "big gap" between five and six "seemed like a good cutoff point."  *See id.*

11

Under the arbitrary and capricious standard of review,
"[a]ll that is required is that the Board's decision 'minimally
contain a rational connection between the facts found and the
choice made.'"  *Frizelle*, 111 F.3d at 176 (quoting *Motor Vehicle
Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983)).
In this case, the AFBCMR's decision not to order corrective
action was rationally based on nearly 1,800 pages of
documentation in the administrative record, including
correspondence from plaintiff, advisory opinions from various Air
Force offices, independent reviews by SAF/IG and DoD/IG, and the
recommendation of the SRB.  Based on this record, the AFBCMR
found that it was within the Selection Board's discretion to
select only five candidates for promotion, *see* AR at 20, 38; that
the selection process was not inappropriately manipulated by
senior officer management, *see* AR at 38-39; and, ultimately, that
the record failed to demonstrate the existence of "probable error
or injustice" warranting plaintiff's promotion to the Reserve
grade of major general, *see* AR at 8, 40.  The AFBCMR has
adequately articulated a rational connection between these
conclusions and the exhaustive administrative record.
Accordingly, the Court is persuaded that the Board's decision not
to take corrective action with respect to plaintiff's record is
not arbitrary, capricious, or contrary to law.

**B.    Privacy Act Claims**

The Privacy Act, 5 U.S.C. § 552a (1982), requires governmental agencies to maintain accurate records and provides individuals with certain safeguards, including rights of access, to government files containing personal information.  Plaintiff's Privacy Act claims appear to fall into two categories.  First, plaintiff argues that the Air Force has failed to comply with his request under Section 552a(d)(1) for access to the Descending Score Roster and related documents concerning the CY '90 promotion process.[6]  *See* Compl. ¶ 71.  With respect to this claim, he is seeking an order of the Court pursuant to 5 U.S.C. § 552a(g)(3)(A) requiring the Secretary to produce the documents. *See* Compl. ¶ 76(B).[7]  Plaintiff's second group of Privacy Act

---

[6] 5 U.S.C. § 552a(d)(1) requires each agency that maintains a "system of records" to allow any individual to gain access to his record or to "any information pertaining to him which is contained in the system" upon his request (subject to certain exemptions set forth in subsections (j) and (k)).

[7] Subsection (g) provides individuals with a civil remedy whenever any agency
    (A) makes a determination ... not to amend an individual's record in accordance with his request ...
    (B) refuses to comply with an individual request under subsection (d)(1) of this section;
    (C) fails to maintain any record concerning any individual with such accuracy ... and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual; or
    (D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way

claims flows from his belief that the Air Force's records regarding the 1989 promotion process are not "accurate" or "complete" (apparently because they do not reflect the promotion that he feels he was entitled to).  Plaintiff contends that the Secretary is liable under Sections 552a(g)(1)(A) and 552a(g)(1)(C) for denying his requests to amend the records and for failing to maintain his records with such "accuracy, relevance, timeliness, and completeness as is necessary to assure fairness."  *See* Compl. ¶¶ 73-75.  With respect to this second group of claims, plaintiff is seeking an order of the Court amending his record to "reinstate or promote him to the rank of Major General" and awarding damages sustained as a result of the Secretary's "intentional and willful" failure to comply with the requirements of the Act.[8]  *See* Compl. ¶ 76.  The government offers three bases for the dismissal of plaintiff's claims: (1) that they are untimely; (2) that the records at issue are not part of a Privacy Act "system of records;" and (3) that plaintiff has not established any inaccuracies in the record.  *See* Defs.' Reply at 3.

The Court agrees that plaintiff's first set of claims, at

as to have an adverse effect on an individual.
5 U.S.C. § 552a(g)(1).

[8] Section (g)(4) provides for recovery of actual damages in suits brought under (g)(1)(C) or (D) in which the court determines that the agency acted in a manner which was intentional or willful.  5 U.S.C. § 552a(g)(4).

the very least, are untimely.  Privacy Act claims are subject to
a two-year statute of limitations.  5 U.S.C. § 552a(g)(5); *see*
*Tijerina v. Walters*, 821 F.2d 789, 798 (D.C. Cir. 987)
(concluding that the limitations period runs from the date the
plaintiff knew or should have known about the alleged violation).
In cases where an agency has "materially and willfully"
misrepresented information that is material to establishing its
own liability under the Act, an action may be brought "at any
time within two years after discovery by the individual of the
misrepresentation."  5 U.S.C. § 552a(g)(5).  In addition, the
Privacy Act limitations period may be equitably tolled in certain
cases, especially where a plaintiff "despite all due diligence
... is unable to obtain vital information bearing on the
existence of his claim."  *See Chung v. U.S. Dep't of Justice*, 333
F.3d 273, 278 (D.C. Cir. 2003).

     Levant likely knew, or should have known, of his Privacy Act
cause of action on April 14, 1993, the date the Air Force issued
a final decision on plaintiff's Privacy Act and FOIA requests for
documents.  Defs.' Mem. Ex. 1; *see* Consolidated Facts ¶ 23.
Although plaintiff contends that the Air Force "intentionally or
willfully misrepresented" its Privacy Act obligations by stating
that none of the responsive documents were maintained in a
Privacy Act system of records, *see* Consolidated Facts ¶ 23, any
misunderstanding should have been cleared up by defendants'

subsequent letters of May 30, 1996, April 4, 1997, May 23, 1997,
and August 6, 1997, all of which clarified that a copy of the
Descending Score Roster did indeed exist in defendants' files,
but that it was being withheld pursuant to FOIA exemption 5.  *See*
Defs.' Mem. Exhibits 2-5.  At the very latest, plaintiff should
have been aware of the accrual of his Privacy Act cause of action
by February 16, 2000, when his final FOIA request was denied.
*See* Defs.' Mem. Ex. 7.  Under the circumstances, the Court is not
persuaded that plaintiff was "deprived of a 'reasonable time' in
which to file suit."  *See Chung*, 333 F.3d at 279.  Because
plaintiff did not file the present cause of action until April
12, 2002--nearly nine years after the denial of his original
Privacy Act request and more than two years after the denial of
his final request--his Privacy Act claims are time-barred.

Plaintiff also misunderstands the nature of Privacy Act
relief with respect to the alleged "inaccuracies" in his record.
"The Privacy Act allows for amendment of factual or historical
errors.  It is not, however, a vehicle for amending the *judgments*
of federal officials or others as those judgments are reflected
in records maintained by federal agencies."  *Kleiman v. Dept. of
Energy*, 956 F.2d 335, 337-38 (D.C. Cir. 1991)(quoting *Rogers v.
United States Dep't of Labor*, 607 F. Supp. 697, 699 (N.D. Cal.
1985)).  Although plaintiff believes he is entitled to a
promotion, his records are not technically "inaccurate."  They,

16

like the records in *Kleiman*, "correctly reflect the position to which [plaintiff] officially was assigned." *See Kleiman*, 956 F.2d at 337.  Plaintiff's true complaint is not about the accuracy of his records, but about the underlying decision they reflect.  *See* Defs.' Reply at 8 ("Any fair reading of plaintiff's opposition demonstrates that the Complaint here is not about inaccurate records – or records at all – but rather his (incorrect) belief that he was entitled to a promotion because seven, rather than five, brigadier general candidates should have been recommended.").  As the Court of Appeals noted in *Kleiman*, this "is not the stuff of which Privacy Act suits are made." *Kleiman*, 956 F.2d at 337.

Finally, plaintiff is not entitled to a writ of mandamus. Plaintiff concedes that the "mandamus relief he seeks is essentially the same relief he seeks by his primary Privacy Act claims."  Pl's. Opp'n at 14.  However, for the reasons described above, plaintiff has not established a clear nondiscretionary obligation on the part of defendants to "perform a duty owed to the plaintiff."  *See* 28 U.S.C. § 1361; *Council of and for the Blind of Delaware County Valley, Inc. v. Regan*, 709 F.2d 1521, 1533 (D.C. Cir. 1983).  Accordingly, plaintiff may not invoke the "extraordinary remedy" afforded by the Mandamus Act.  *See id.*

**IV.  CONCLUSION**

As noted above, this case requires the Court "to determine

17

only whether the Secretary's decision making process was
deficient, not whether his decision was correct." *Kreis*, 866
F.2d at 1511.  Because the Secretary's decision contains a
"rational connection between the facts found and the choice
made," defendants are entitled to summary judgment on plaintiff's
APA claims.  Moreover, plaintiff's Privacy Act claims are
untimely and fail to state a claim upon which relief may be
granted.

Accordingly, defendants' motion will be **GRANTED** and
plaintiff's Complaint will be **DISMISSED WITH PREJUDICE**.  A
separate Order and Judgment accompanies this Memorandum Opinion.


**Signed:**   **Emmet G. Sullivan**
            **United States District Judge**
            **August 5, 2005**